IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CRYSTAL T. DAVIS,

    Plaintiff,

v.                          Civil Action Number 3:09cv558

HENRICO CO. POLICE,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Docket No. 5). The Court dispenses with oral argument because it would not assist in the decisional process. For the reasons set forth herein, the Court will grant the Defendant's motion.

### I. BACKGROUND

**A.    Factual Background**

The Plaintiff, Crystal T. Davis, is a 24-year-old woman who was arrested on September 6, 2007 on felony charges after a search of 4823 Altair Road, Richmond, Virginia, a residence located in Henrico County that the Plaintiff shared with her parents ("the residence"). The arrest was effectuated by the cooperative efforts of the George Mason University ("GMU") Police Department (employer of Thomas W. Bacigalupi, the defendant in case #3:09cv556 ("Officer Bacigalupi")), the William & Mary ("Wm. & Mary") Police Department (employer of Benny D. Back, II, the defendant in case #3:09cv557 ("Officer Back")) and the Henrico County Division of Police (the

defendant in the instant case ("the Henrico Police" or "the Defendant"). The arrest was the product of the events detailed herein.

On or about February 13, 2006, GMU was the victim of a burglary by breaking and entering in which certain electronic equipment was taken. Curtis P. White ("Mr. White"), Conor Harris ("Mr. Harris"), and possibly a third suspect, initially believed to be the Plaintiff, were photographed and videotaped committing the crimes. Mr. White had been one of the Plaintiff's roommates on or near the Wm. & Mary campus in Williamsburg, Virginia since December of 2005. On June 6, 2006, Blue Ridge Computers, an entity created by Mr. White, invoiced BPAI, LLC ("BPAI"), an electronics dealer in Baltimore, Maryland, the amount of $2,000 for the stolen electronic equipment. The Invoice directed BPAI to "[m]ake all checks payable to Crystal Davis." That same day, BPAI wrote a $2,000 check, drawn on an account at Wachovia Bank, to the Plaintiff, Crystal Davis. The check was endorsed and deposited by the Plaintiff at the Virginia Credit Union, and it was collected through the Credit Union Service Center on or about June 7, 2006. The Plaintiff insists that the $2,000 check represented rent money owed to her by Mr. White. Bank records linked the checks to the Plaintiff and the residence at 4823 Altair Road. Mr. White and Mr. Harris both gave statements to Detective Mark Riley of the Lexington, Virginia Police Department linking the Plaintiff to the GMU burglary.

On September 6, 2007, Officer P. Millan of the GMU Police, as Applicant, made probable cause representations to Fairfax County Magistrate Marla McCormick, who issued Arrest Warrants for three felony charges against the Plaintiff under Virginia Code Sections 18.2-178, 18.2-22 & 18.2-95, and 18.2-108 for the theft of U.S. currency and computer equipment. Following the issuance of the Arrest Warrants, Officer Bacigalupi presented in an Affidavit to Henrico County

Magistrate J. Robinson his factual justification to search the residence. Such factual justification, contained in Item 4 of the Affidavit, included Officer Bacigalupi's representation that items stolen from GMU were sold to BPAI, and a check for the proceeds of the sale was written to the Plaintiff and deposited in the Plaintiff's bank account. In Item 6 of the Affidavit, Officer Bacigalupi represented that the reliability of this factual justification could be determined by considering the facts that (1) Lexington Detective Mark Riley sent photos to Officer Bacigalupi of "a suspect" who Detective Riley had identified through bank records and a statement from Mr. Harris and (2) "[i]t was further discovered that another check was written to Ms. Crystal T. Davis of 4823 Altair Road, Richmond, VA 23231" that was cashed by Ms. Davis at her bank.[1] The Plaintiff contends that Detective Riley "never implicated [her] in any way" and expressed his belief that the Plaintiff was "duped into endorsing a check by Mr. White." In the Affidavit, Officer Bacigalupi sought to search the residence for (1) master keys belonging to GMU, (2) GMU's electronic equipment, (3) computers with email correspondence, and (4) paper records of the suspect transactions. Magistrate Robinson authorized the search and issued a Search Warrant at 7:36 p.m. on September 6, 2007.

When the police arrived at the residence at approximately 9:00 p.m. on September 6, 2007, the Plaintiff opened the door after Officer Bacigalupi announced that the Plaintiff's father "was on the phone and said it was OK to open the door." The Plaintiff maintains that Officer Bacigalupi's announcement was a lie and that her father had given no such instruction to Officer Bacigalupi. During their search, the GMU police confiscated the Plaintiff's two computers, a jump drive, and

---

[1] The Court must note that it is unclear in the Affidavit exactly who the "suspect" identified by Detective Riley actually was, how many checks were alleged to have been written to the Plaintiff by BPAI, and how it was discovered that the Plaintiff was the receiver of the BPAI check(s). Indeed, it appears that even GMU's Chief of Police acknowledged that "the affidavit is not perfectly clear." *See* Pl.'s Response Br. at 1-2.

some assorted papers from the residence. Subsequent to the search, the Plaintiff was arrested and read her *Miranda* rights by Officer Bacigalupi. The Plaintiff was handcuffed and then transported by the Henrico Police to their "West-end Station," where she waived her right to remain silent and executed a *Miranda* waiver before being questioned for several hours and put into jail.

In a handwritten statement given to the Henrico Police, the Plaintiff confessed to (1) knowing and living with Mr. White at Wm. & Mary in Williamsburg, (2) watching Mr. White use a master key to open the Wm. & Mary Recreation Center Commons after hours, (3) seeing a stash of "whitish computers" in the Plaintiff's and Mr. White's Williamsburg house for which she could not account, (4) receiving a check related to a Baltimore pawn shop (BPAI) from Mr. White, and (5) knowing that Mr. White "would steal a key and/or the entire lock and hand-file a key for himself." *See* Def.'s Supp. Mem. Ex. I at 1-2. On September 10, 2007, the Plaintiff was transported from the Henrico facility to Fairfax County jail, and she was released the following day on pre-trial probation.

On or about September 14, 2007, felony charges were placed against the Plaintiff and others in connection with the GMU electronic equipment burglary. The Plaintiff cooperated with Fairfax County's prosecutor who determined her to be a "minor player" in the crimes, and all of the charges against the Plaintiff were *nolle prossed* on November 14, 2007. The Plaintiff contends that the charges were *nolle prossed* because Fairfax County knew that "they had no case against [the Plaintiff]" because she was neither present for, nor a party to, the GMU burglary. She reiterates that she "did not commit the crimes for which [she] was arrested.".

Additionally, as a result of the Plaintiff's September 7, 2007 handwritten statement, Officer Back also secured a felony Warrant of Arrest against the Plaintiff in James City County related to the Plaintiff's participation in the alleged breaking and entering of the Wm. & Mary Recreation

4

Center Commons. The Plaintiff does not dispute the fact that she entered the Recreation Center Commons after hours, but she does insist that she was unaware that Mr. White intended to commit a crime once inside, explaining that "[m]any of us had keys to the facility from time-to-time." The Plaintiff was arrested on Officer Back's warrant while in class on September 26, 2007. The charge was ultimately modified to misdemeanor trespass and dismissed by the trial judge on December 22, 2008.

The Plaintiff now complains (1) about her father having to make five demands to see the Search Warrant; (2) of several errors in the Henrico County Search Warrant including listing her birth date incorrectly and listing her race as "white" instead of "black;" (3) that the search of her residence exceeded the scope of the Warrant as to items to be examined; (4) that the search of the residence at night was not justified and was based on manufactured evidence; (5) that Sgt. Riley of Lexington could not implicate her in any crime; (6) that she was handcuffed; (7) that the execution of the residential search employed "shock and awe" tactics and "caused undue danger and turmoil;" (8) that GMU Police lied to gain entry; (9) that she was not treated well following her arrest because she was "shackled and escorted by two armed, sizable Caucasian men," denied bail, and left to sleep in "a refrigerator like cell;" and (10) that her computers were ultimately returned to her in non-working order, resulting in the loss of "important course work" that caused a delay in her graduation from college. According to the Plaintiff, these events humiliated her and caused her and her family stress, hardship, and financial losses.

B.      **Procedural Background**

The Plaintiff filed her Complaint on September 10, 2009 (Docket No. 3).[2] On October 6, 2009, the Defendant filed its motion to dismiss (Docket No. 5) and supporting memorandum (Docket No. 6) seeking dismissal of the Plaintiff's Complaint for failure to state a claim upon which relief can be granted.[3] The Plaintiff responded to the motion on October 22, 2009 (Docket No. 7), and the Defendant replied on October 23, 2009 (Docket No. 8). Accordingly, this matter is ripe for the Court's decision.

In her Complaint, the Plaintiff makes no specific jurisdictional allegations except to state that the Defendant violated "my civil rights and those of my parents, Fourth Amendment to the U.S. Constitution." Pl.'s Compl. at 5. She defines these rights as her "basic rights as a citizen of the United States of America as it relates to search, seizure, and arrest." *Id.* Preliminarily, the Court notes that the Plaintiff does not have standing to sue for any injury alleged to have been suffered by her parents, so any claims purportedly brought on their behalf will be dismissed. *See Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 319 (4th Cir. 2002) (To meet Article III's constitutional standing requirement, a plaintiff must show that (1) *she* has suffered an injury in fact, (2) the injury is fairly traceable to the challenged action of the defendant, and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.). The Court notes also that the allegations contained in a *pro se* complaint are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However,

---

[2]The Plaintiff's Complaint in this case is identical to the one filed in both case #3:09cv556 and case #3:09cv557.

[3]The Defendant's motion to dismiss contained a proper *Roseboro* Notice pursuant to Rule 7(k) of the Local Rules of Civil Procedure.

the Supreme Court has made clear that it "ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Thus, while the Court must extend leeway to the *pro se* Plaintiff, such leeway must be tempered to require the Plaintiff to comply with the Federal Rules of Civil Procedure, specifically, here, the pleading requirements of Rule 8. In testing the sufficiency of the *pro se* Plaintiff's Complaint under Rule 12(b)(6), the Court will also consider the allegations made in the Plaintiff's memorandum filed in opposition to the Defendant's motion to dismiss. *See Rush v. Am. Home Mortgage, Inc.*, No. WMN-07-CV-0854, 2009 WL 4728971, slip op. at 3 (D. Md. Dec. 3, 2009) (the court can consider additional facts alleged in a *pro se* litigant's response brief due to the court's obligation to construe liberally a *pro se* Complaint); *Donahue v. U.S. Dep't of Justice*, 751 F. Supp. 45, 49 (S.D. N.Y. 1990), *abrogated on other grounds by Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) (holding that, due to "[t]he court's duty to adopt a generous attitude when evaluating a pro se complaint," it would consider the allegations in the plaintiff's opposition to the motion to dismiss where they are consistent with the allegations in the complaint); *Smith v. Blackledge*, 451 F.2d 1201, 1202-03 (4th Cir. 1971) (holding that a document denominated by the plaintiff as one to "further particularize" the complaint, which included new claims, but construed by the District Judge as an opposition to the defendants' motion to dismiss should have been considered an amendment to the complaint); *Riner v. Edwards*, Civ. No. 7:07-cv-00455, 2008 WL 4388788, at * 6 (W.D. W. Va. Sept. 26, 2008) (holding that the court would construe the plaintiff's opposition to the motion to dismiss to the extent that it raised new claims because of the "less stringent" pleading standards to be accorded *pro se* plaintiffs); *Motto v. Correctional Med. Servs.*, Civ. No. 5:06-cv-00163, 2007 WL 2897854, at *3 (S.D. W. Va. Sept.27,

2007) (upholding the magistrate judge's decision to consider the plaintiff's response brief as a pleading because "the court is charged with liberally construing a pleading filed by a pro se litigant to allow for the development of a potentially meritorious claim").

Therefore, the Court construes the Plaintiff's Complaint, in conjunction with the Plaintiff's response memorandum, as having brought the following claims: (1) a substantive due process claim under 42 U.S.C. § 1983, (2) a Fourth Amendment unlawful arrest claim under 42 U.S.C. § 1983, (3) a Fourth Amendment excessive force claim under 42 U.S.C. § 1983, (4) a Fourth Amendment unlawful search claim under 42 U.S.C. § 1983, (5) a Fourth Amendment unlawful seizure of property claim under 42 U.S.C. § 1983, (6) a Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983, and (7) a malicious prosecution claim under Virginia common law.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 556 U.S. at ----, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

### III. ANALYSIS

The Defendant has moved to dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court has construed the Plaintiff's Complaint as having brought the following claims: (1) a substantive due process claim, (2) a Fourth Amendment unlawful arrest claim, (3) a Fourth Amendment excessive force claim, (4) a Fourth Amendment unlawful search claim, (5) a Fourth Amendment unlawful seizure of property claim, (6) a Fourth Amendment malicious prosecution claim, and (7) a malicious prosecution claim under Virginia common law. The Court need not, however, address in detail the elements of any of the Plaintiff's claims.

**A.     The Plaintiff's Federal Claims**

The Plaintiff's only named defendant in the instant case is the "Henrico Co. Police." Thus, the Court construes the Plaintiff's Complaint as having been brought against the Henrico County Division of Police. "It is well settled that only 'persons' may act under color of state law[;] therefore, a defendant in a Section 1983 action must qualify as a 'person.'" *Carter v. Georgetown County Sheriff's Dep't*, No. 3:09-779-CMC-JRM, 2009 WL 1393509 at *3 (D. S.C. May 18, 2009). The Henrico County Division of Police is a "department[], group[] of buildings, or facilities . . . [that] cannot act under color of state law." *Id.* (citing *Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969) (finding that California Adult Authority and San Quentin Prison were not "person[s]" subject to suit under 42 U.S.C. § 1983); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301(E.D.

9

N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit.")). Therefore, any claims brought against the Henrico County Division of Police must be dismissed for failure to state a claim.

However, the Plaintiff "ask[s] that the [C]ourt recognize[] and accept the intent of [her] filing" in so far as "the Henrico Police is an entity of Henrico County." Pl.'s Opp'n Mem. at 2. Yet, even construing her Complaint very liberally – as the Court will do for *pro se* plaintiffs – as having been brought against the County of Henrico, "a municipality may not be held liable under § 1983 solely because it employs the [alleged] tort-feasor; rather, a plaintiff must identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Carter*, *supra*, No. 3:09-779-CMC-JRM at *4 (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997); *McMillian v. Monroe County, Alabama*, 520 U.S. 781 (1997); *Knight v. Vernon*, 214 F.3d 544, 552-53 (4th Cir. 2000)). As the Plaintiff has not identified any actionable Henrico County policy or custom whatsoever, all six of the Plaintiff's claims under § 1983 must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### B. The Plaintiff's State Claim

The Plaintiff's state malicious prosecution claim against the Henrico County Division of Police – or more appropriately, Henrico County – must also be dismissed under Rule 12(b)(6). Henrico County is a municipality. A municipal corporation, an agency of the state, is immune from liability in tort actions when the act occurs in performing a governmental function. *Ashbury v. City of Norfolk*, 152 Va. 278, 282 (1929). This immunity does not apply, however, when the city performs non-governmental or "proprietary" functions. *Woods v. Town of Marion*, 245 Va. 44, 45 (1993). If the city is engaged in a proprietary function, respondeat superior may operate to hold the

city liable for wrongful acts by its agents or employees. *See Id.*

A function is considered a "governmental function" for purposes of immunity if it involves the exercise of an entity's political, discretionary, or legislative authority. *Carter v. Chesterfield County Health Comm'n*, 259 Va. 588, 591 (2000). It is "proprietary" if it is a ministerial act and involves no discretion. *Id.* The frequently applied test is as follows: "if the act in question is done by the municipality for the common good, without the element of corporate benefit or pecuniary profit, it is a governmental act entitled to governmental immunity." *Bialk v. City of Hampton*, 242 Va. 56, 59 (1991); *see also City of Virginia Beach v. Carmichael Dev. Co.*, 259 Va. 493, 499 (2000) (stating that governmental functions performed by a municipality are powers and duties to be performed exclusively for the public welfare). Further, where an activity involves elements of both governmental and proprietary functions, the governmental function controls and the city is entitled to immunity. *Transportation, Inc. v. City of Falls Church*, 219 Va. 1004, 1006 (1979).

It is well-established that a municipality acts in a "governmental character in maintaining and operating a police force, and therefore is immune for the wrongful acts of its officers." *Snyder v. City of Alexandria*, 870 F. Supp. 672, 691 (E.D. Va.1994) (interpreting Virginia law); *Slaughter v. Duling*, 33 Va. Cir. 476, 482-83 (1972); *Boone v. City of Norfolk*, 54 Va. Cir. 166, 2000 WL 33595056, at *2 (2000). Here, the Plaintiff has not named a specific Henrico County officer in his individual capacity, but has, instead, brought an action solely against Henrico County for the allegedly tortious conduct of its employee police officers. Given that maintaining and operating a police force is squarely a "governmental function," the Plaintiff's tort action for malicious prosecution cannot stand, as Henrico County is immune from such a suit. Accordingly, the Plaintiff has failed to state a claim for malicious prosecution.

11

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's Complaint is not sufficient under Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure to state a claim for relief that is plausible on its face. Therefore, the Court will grant the Defendant's motion to dismiss. An appropriate Order shall issue.

<u>April 29, 2010</u>                                        /s/
DATE                                       RICHARD L. WILLIAMS
                                           SENIOR UNITED STATES DISTRICT JUDGE